IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:                                                        ) | No. 2:09-cv-02910-GEB |
| RICHARD J. SHIELDS,                        ) | Bankruptcy Court Case No. 06- |
|                             Debtor.          ) | 22377-C-7 |
| _____ ) | |
|                                                               ) | Adv. Proc. No. 08-02352 |
| NEIL MCLEAN,                                    ) | |
|                                                               ) | |
|                             Appellant,        ) | ORDER AFFIRMING IN PART, AND |
|                                                               ) | VACATING AND REMANDING IN |
|               v.                                          ) | PART, APPEAL OF ADVERSARY |
|                                                               ) | PROCEEDING |
| THE BANKRUPTCY ESTATE OF RICHARD ) | |
| J. SHIELDS, by and through           ) | |
| MICHAEL F. BURKART, Chapter 7       ) | |
| Trustee,                                            ) | |
|                                                               ) | |
|                             Appellee.          ) | |
| _____ ) | |

Appellant Neil McLean ("McLean") and bankruptcy trustee Appellee Michael F. Burkart ("Burkart") appeal from the judgment of the United States Bankruptcy Court in an adversary proceeding brought by Burkart on behalf of the bankruptcy estate of Richard J. Shields ("Shields") against McLean. Jurisdiction over the appeal is under 28 U.S.C. §§ 158(a)(1) and (c)(1).

## I. Factual Record on Appeal

Shields operated a trucking company named Shields Trucking in 2004. (Excerpt of Record ("ER") 9, ¶¶ 2-3.) McLean made various loans to Shields that could be used as a down payment to buy Shields Trucking.

Id. 18, 34:21-35:7; 40:19-23; 94:10-18. Shields did not repay the loans, and McLean filed a lawsuit in Butte County Superior Court in which he alleged Shields defaulted on the loans and had fraudulently obtained the loans. Id. 11, ¶ 18; 21, Ex. M.

Shields began negotiating the sale of Shields Trucking to SoCal D&D Services, Inc. ("D&D") in 2005. Id. 23, 15:22-24. D&D was prepared to pay $3.25 million for Shields Trucking. Id. 23, 21:9-16. Shields was to retain $200,000 in accounts receivable after the sale. Id. 9, ¶ 51. At the time, Shields owed his creditors $1,595,080.00 in secured debt and $1,527,769.00 in unsecured debt. Id. 20, Ex. 17.

When McLean's attorney, Russell Longaway ("Longaway"), learned of the possible sale of Shields Trucking to D&D, Longaway wrote a letter to D&D stating that McLean is the "equitable owner" of Shields Trucking and that any transfer of the business by Shields would be a "fraudulent transfer within the meaning of California law." Id. 20, Ex. 16. Subsequently, D&D withdrew its offer to purchase Shields Trucking based on the contents of this letter. Id. 23, 36:10-12.

Shields filed for bankruptcy in this district in July of 2006. Shields declares he was forced to file for bankruptcy due to the unconsummated sale of Shields Trucking to D&D. Id. 9, ¶ 71. Burkart commenced an adversary proceeding on behalf of the bankruptcy estate against McLean and Longaway in July of 2008, based on the unconsummated sale of Shields Trucking. Id. 1. The complaint in this adversary proceeding included claims for interference with prospective economic advantage and violation of California Business and Professions Code section 17200 et seq. ("section 17200"). Id. 1, ¶¶ 63-72; ¶¶ 83-93. The adversary proceeding was tried in the bankruptcy court. The bankruptcy court ruled in favor of the bankruptcy estate on the interference with

1  prospective economic advantage claim and entered a $300,000 judgment.
2  Id. 25, 2:9-11. The bankruptcy court also ruled that McLean's claim
3  against the estate for the unpaid loans is equitably subordinated to
4  other claims under 11 U.S.C. § 510(c)(1). Id. 25, 2:14-17.

5  ## II. Issues Raised by McLean

6  McLean raises seven arguments on appeal: 1) the bankruptcy
7  court applied the wrong measure of damages to Burkart's interference
8  with prospective economic advantage claim; 2) the bankruptcy court erred
9  in including $200,000 of the $300,000 judgment because this amount is
10 comprised of the value of accounts receivable Shields had before filing
11 for bankruptcy, and the value of the accounts receivable became part of
12 the bankruptcy estate; 3) the bankruptcy court erred in using a $27,000
13 figure to estimate the tax consequence of the unconsummated sale; 4) the
14 bankruptcy court erred in qualifying Burkart's witness, Dennis Diver
15 ("Diver"), as an expert witness; 5) the bankruptcy court erred in
16 admitting into evidence several financial statements and documents
17 concerning Shields Trucking; 6) the bankruptcy court erred in admitting
18 Kenneth Herold's deposition transcript into evidence; and 7) the
19 bankruptcy court erred in equitably subordinating McLean's claim against
20 the estate.

21 ### A.   Measure of Damages for Interference with Prospective Economic
            Advantage
22

23 The issue concerning McLean's challenge of the bankruptcy
24 court's method of measuring damages for Burkart's interference with
25 prospective economic advantage claim is reviewed under the abuse of
26 discretion standard. See Traxler v. Multnomah Cnty., 596 F.3d 1007, 1014
27 n.4 (9th Cir. 2010) ("The . . . court's award of damages . . . is
28 reviewed for an abuse of discretion . . . ."). A court "abuses its

discretion when its 'decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision.'" <u>Kali v. Bowen</u>, 854 F.2d 329, 331 (9th Cir. 1988) (quoting <u>Petition of Hill</u>, 775 F.2d 1037, 1040 (9th Cir. 1985)).

McLean argues the bankruptcy court should have applied a "benefit of the bargain" measure of damages, which calculates the difference between the purchase price of an unconsummated sale and the value of assets retained by the seller after the sale failed to consummate. McLean argues had this measure of damages been used, Burkart would not be entitled to any monetary recovery because the value of Shields Trucking's assets were greater than the proposed sale price of Shields Trucking.

The bankruptcy court based its judgment on the loss of "net proceeds from the sale" of Shields Trucking. (ER 19, 232:13-15.) Under California law, the measure of damages for interference with prospective economic advantage may include "(a) the pecuniary loss of the benefits of the contract . . . ; [and] (b) consequential losses for which the interference is a legal cause . . . ." 6 B.E. Witkin, <u>Summary of California Law</u>, § 1709 (10th ed.). The bankruptcy court's use of the loss of "net proceeds from the sale" of Shields Trucking is consistent with the proper measure of damages for interference with prospective economic advantage, since this measure of damages was intended to compensate the bankruptcy estate for a benefit that was lost because of the unconsummated sale. Therefore, the bankruptcy court did not abuse its discretion in measuring damages.

**B.   Inclusion of $200,000 in the Judgment**

McLean argues the bankruptcy court erred in including $200,000 as part of the $300,000 judgment. The bankruptcy court's decision to

1  include $200,000 in the judgment is reviewed for abuse of discretion.

2  See Traxler, 596 F.3d at 1014 n.4.

3         McLean contends the $200,000 reflects the value of accounts

4  receivable that Shields would have kept after the sale consummated.

5  McLean argues since Shields was entitled to collect the accounts

6  receivable whether or not the sale consummated, and the accounts

7  receivable became part of the bankruptcy estate, it was improper to

8  include them in the measure of damages for the unconsummated sale.

9         It is unclear whether the bankruptcy court abused its

10 discretion by including in the judgment what is referenced in the trial

11 transcript as a $200,000 value of the accounts receivable. (ER 19,

12 233:14-16.) Although $200,000 is referenced as the value of the accounts

13 receivable, the bankruptcy court also stated that the unconsummated sale

14 caused Shields debt to increase "like crazy," and that "the business

15 just continued to decline." (ER 19, 235:19-236:1.) The trial record also

16 contains evidence indicating Shields was forced to file for bankruptcy

17 after the sale failed to consummate since Shields could not overcome his

18 "financial problems." (ER 9, ¶ 71.) Since the bankruptcy court's reason

19 for including the referenced $200,000 in the judgment is unclear, this

20 issue is remanded for deletion of this amount from the judgment or for

21 a clearer explanation of the judgment. See In re Dutta, 175 B.R. 41, 46

22 (9th Cir. B.A.P. 1994) ("While a trial court need not necessarily

23 explain its analysis in terms of elaborate mathematical calculations, .

24 . . it must provide sufficient insight into its exercise of discretion

25 to allow an appellate court to exercise its reviewing function.")

26 **C.   Reduction of $27,000 from the Judgment**

27        McLean argues the bankruptcy court erred in determining that

28 $27,000 is the tax consequence of the unconsummated sale, contending

this figure is speculative and unsupported by the record. However, McLean has not preserved this issue for appeal since he did not raise the issue in argument before the bankruptcy court.

"[A]n appellate court will not hear an issue raised for the first time on appeal." <u>Whittaker Corp. v. Execuair Corp.</u>, 953 F.2d 510, 515 (9th Cir. 1992). "[N]o bright line rule exists to determine whether a matter has been properly raised below. A workable standard, however, is that *the argument must be raised sufficiently for the trial court to rule on it.* This principle accords to the [trial] court the opportunity to reconsider its rulings and correct its errors." <u>Id.</u> (quotations and citations omitted) (emphasis added).

During the bankruptcy court trial, McLean argued the court should consider the tax consequence of the unconsummated sale and reduce that amount from any award. (ER 19, 228:7-12.) Thereafter Longaway argued that: "I just did a quick tax calculation" showing that "a tax bill [would be] about $700,000." <u>Id.</u> 229:7-13. The bankruptcy court did not accept this argument. Instead, the bankruptcy court estimated that $27,000 was the tax consequence of the unconsummated sale. <u>Id.</u> 232:13-24. McLean never contested the bankruptcy court's $27,000 estimation during his argument.

During oral argument on appeal, McLean's counsel argued he lacked the opportunity during trial to raise the $27,000 tax consequence issue. However, McLean's counsel argued about the bankruptcy court's inclusion of $200,000 as part of the judgment, and could have also argued the tax consequence issue at the same time. (<u>See</u> ER 19, 232:8-236:16.)

Since McLean never argued to the bankruptcy court that it lacked evidence to reach the $27,000 tax consequence figure, the

bankruptcy court did not have "the opportunity to reconsider its rulings and correct its errors." <u>Whittaker Corp.</u>, 953 F.2d at 515. Therefore, this issue was not preserved on appeal, and the ruling is affirmed.

McLean also argues the bankruptcy court erred in not reducing the judgment by approximately $700,000. However, the bankruptcy court said: "I have no idea what the taxes would be. I don't know if they would be what Mr. Longaway suggests, but I'm willing to make an adjustment for it." In light of the arguments made on the tax issue, the bankruptcy court did not abuse its discretion in rejecting the argument for a higher tax amount, and McLean has not preserved his challenge to the amount the bankruptcy court used to reduce the damages award.

**D.   Qualification of Diver as an Expert Witness**

McLean argues the bankruptcy court erred in qualifying Diver as an expert witness. The bankruptcy court's decision to qualify an expert witness is reviewed for abuse of discretion. <u>See</u> <u>McEuin v. Crown Equip. Corp.</u>, 328 F.3d 1028, 1032 (9th Cir. 2003).

McLean argues this was error because Diver failed to produce an expert report prescribed in Federal Rule of Civil Procedure 26(a)(2)(B). This rule requires an expert witness report to be produced "[u]nless otherwise . . . ordered by the court," and during trial, the bankruptcy judge stated: "It was otherwise ordered by the court." <u>Id.</u> 18, 157:14-16.

The record shows prior to trial the bankruptcy court stated in a pretrial scheduling order that all experts "are to be fully prepared to render an informed opinion at the time of designation so that they may fully participate in any deposition taken by the opposing party." (ER 28, 2:17-20). It was within the bankruptcy judge's discretion to interpret the pretrial scheduling order as only ordering experts to be

made available for deposition, but not requiring production of an expert report. Accordingly, McLean has not shown that the bankruptcy court abused its discretion in admitting Diver's expert testimony.

**E.    Financial Statements and Documents Admitted Into Evidence**

McLean argues the bankruptcy court erred in admitting into evidence several financial statements and documents concerning Shields Trucking. However, McLean has not properly raised this issue for appeal because he has not stated with any specificity which financial statements or documents were improperly admitted, or how the bankruptcy court used the statements and documents in reaching its ultimate ruling. See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1217 (9th Cir. 1997) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.") (citation omitted). Since the issue was not properly raised, the bankruptcy court's decision to admit the financial statements and documents into evidence is affirmed.

**F.    Deposition Transcript of Kenneth Herold**

McLean argues that the bankruptcy court improperly admitted the deposition transcript of Kenneth Herold into evidence because the transcript contained hearsay, and also because much of the testimony was not based on Herold's personal knowledge. However, this issue has not been preserved for appeal. In a previous order, this Court ruled that McLean did not properly object to the admittance of the deposition transcript before the bankruptcy court, and denied McLean's request to supplement the record with objections. (See Order, August 30, 2010, Docket No. 34.) "The failure of a litigant to request a ruling [on an

1 | evidentiary objection constitutes] a waiver of the right to raise any
2 | issue [on appeal] concerning admissibility." <u>Fenton v. Freedman</u>, 748
3 | F.2d 1358, 1360 (9th Cir. 1984). Therefore, the bankruptcy court's
4 | decision to admit the deposition transcript is affirmed.

5 | **G.   Equitable Subordination**

6 |       Lastly, McLean argues that the bankruptcy court erred in
7 | equitably subordinating his claim against the bankruptcy estate to the
8 | other claims against the estate under 11 U.S.C. § 510(c)(1). The
9 | bankruptcy court's decision to equitably subordinate McLean's claim is
10 | reviewed for abuse of discretion. <u>In re Filtercorp, Inc.</u>, 163 F.3d 570,
11 | 583 (9th Cir. 1998).

12 |       Equitable subordination requires three findings: "(1) that the
13 | claimant engaged in some type of inequitable conduct, (2) that the
14 | misconduct injured creditors or conferred unfair advantage on the
15 | claimant, and (3) that subordination would not be inconsistent with the
16 | Bankruptcy Code." <u>In re First Alliance Mortg.</u>, 471 F.3d 977, 1006 (9th
17 | Cir. 2006) (citing <u>Feder v. Lazar (In re Lazar)</u>, 83 F.3d 306, 309 (9th
18 | Cir. 1996)). McLean's sole argument against equitable subordination is
19 | that neither Shields nor the bankruptcy estate suffered damages; however
20 | the bankruptcy court found otherwise. Additionally, equitable
21 | subordination concerns the conduct of a creditor and the effect such
22 | conduct has on other creditors. Here, the bankruptcy court found that
23 | McLean's conduct had a negative effect on other creditors because those
24 | creditors would have been paid had the sale of Shields Trucking
25 | consummated. (ER 19, 238:8-16.)

26 | **III. Issues Raised by Burkart**

27 |       Burkart raises two arguments on appeal: 1) the bankruptcy
28 | court erred in not awarding further damages to the bankruptcy estate

based on proceeds of the unconsummated sale that could have been used to pay off Shields' unsecured debt; and 2) the bankruptcy court erred by not imposing "issue sanctions" against McLean under Burkart's section 17200 claim.

**A. Further Damages**

Burkart argues the bankruptcy court should have awarded damages to compensate the estate for lost proceeds of the unconsummated sale that could have been used to pay Shields' unsecured debt. Burkart argues the total judgment would have been $1.85 million if damages were awarded on this basis. The bankruptcy court's award of damages decision is reviewed for abuse of discretion. See Traxler, 596 F.3d at 1014 n.4.

The bankruptcy court did not abuse its discretion in not awarding further damages. The bankruptcy court determined the benefit Shields lost was the net proceeds of the unconsummated sale--the purchase price minus the amount of debt Shields would have paid with the proceeds of the sale. (ER 19, 232:13-15.) This method of calculating damages is proper under California law. See Elsbach v. Mulligan, 58 Cal. App. 2d 354, 366 (1943) (calculating damages for claim of fraudulently inducing termination of a contract based on lost profits). Therefore, Burkart has not shown the bankruptcy court abused its discretion by not awarding further damages based on proceeds that could have been used to pay Shields' unsecured debt.

**B. Issue Sanctions**

Burkart argues that the bankruptcy court erred in not imposing "issue sanctions" against McLean based on testimony McLean gave at trial, which Burkart states contradicts McLean's earlier discovery responses. The bankruptcy court's decision whether or not to impose sanctions is reviewed for abuse of discretion. See Childress v. Darby

<u>Lumber, Inc.</u>, 357 F.3d 1000, 1010 (9th Cir. 2004). Burkart does not explain precisely what the bankruptcy court said when denying the sanctions motion. The trial transcript shows that the bankruptcy court considered the conflicts in McLean's testimony and decided credibility issues against McLean, but chose not to impose the sanctions Burkart requested. Burkart has not shown that this decision was an abuse of discretion. <u>See</u> <u>Trulis v. Barton</u>, 107 F.3d 685, 695-96 (9th Cir. 1995) ("An explanation [as to whether sanctions are warranted] need not be complex, and a judge need not pretend that there is a single right answer that can be reached by deductive logic or defended with precision.") (quotation and citation omitted).

## IV. Conclusion

For the stated reasons, all of the bankruptcy court's rulings are affirmed, except for its decision to include $200,000 referenced as the value of accounts receivables in the judgment. This decision is vacated, and this issue is remanded for deletion of this amount from the judgment or for a clearer explanation of the judgment.

Dated:  November 18, 2010

GARLAND E. BURRELL, JR.
United States District Judge